UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMIGRA GROUP, LLC,

                              Plaintiff,

- v -

FRAGOMEN, DEL REY, BERNSEN & LOEWY, LLP,
FRAGOMEN, DEL REY, BERNSEN & LOEWY II, LLP,
FRAGOMEN GLOBAL IMMIGRATION SERVICES,
LLC, FRAGOMEN GLOBAL LLP, AND
RYAN MATTHEW FREEL,

                              Defendants.

07-cv-10688 (LAK)(HP)

ECF CASE

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DISCOVERY PURSUANT TO RULE 56(f) IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PINNISI & ANDERSON, LLP
111 North Tioga Street, Suite 200
Ithaca, New York 14850
Telephone:  (607) 257-8000

*Attorneys for Plaintiff*

TABLE OF CONTENTS

**Preliminary Statement** ...................................................................................................................1

**Argument**........................................................................................................................................2

    I.    Plaintiff Should be Provided a Fair Opportunity for Discovery
           Before Having to Respond to the Merits of Defendants' Motion ......................................2

        A.    Legal Standards ........................................................................................................2

        B.    Burlington Standards for Pre-Response Discovery are Satisfied ..............................5

            1.    Nature of Uncompleted Discovery ...............................................................5

            2.    Reasonable Expectation to Show Issues of Material Fact.............................6

            3.    Emigra Efforts to Obtain Pertinent Facts ......................................................7

            4.    Why Those Efforts Were Unsuccessful ........................................................8

        C.    Defendants' Factual Allegations are Disputed and Flawed ......................................8

            1.    Market Definition and Dominance by Fragomen ........................................9

            2.    Barriers to Entry..........................................................................................10

**Conclusion** .................................................................................................................................12

Plaintiff Emigra Group, LLC ("Emigra") respectfully submits this memorandum of law in support of an application for discovery pursuant to Fed. R. Civ. P. 56(f), in response to Defendants' motion for summary judgment.

**PRELIMINARY STATEMENT**

Emigra has brought several well-pled claims against the Fragomen Defendants which allege unlawful actions in restraint of trade. Central to Emigra's position is the contention that the pertinent market for analysis is that of single-source providers of a broad range of immigration services to large corporations in need of coordinated services throughout diverse geographic regions. Emigra asserts that the Fragomen Defendants clearly dominate that market, and that they have engaged in unlawful activity to create and enhance that market dominance.

Defendants contend that they are entitled to judgment as a matter of law regarding all of those antitrust claims. In support, they rely primarily upon retained experts who contend that the pertinent market should be defined more broadly, and that broader market has robust competition and no real barriers to entry or growth. They argue in substance that the entire industry of immigration services is the pertinent market for antitrust analysis, and not single-source providers to large corporations. They assert in effect that, because a broader (albeit industry-wide) market can be defined, such broader market definition must be adopted, despite flimsy arguments regarding barriers to entry, and before much of the data and assumptions that Defendants' experts relied upon – or overlooked – to reject the market defined by Emigra, has been tested through discovery.

Emigra rebuts those contentions with the sworn statements of its President, who testifies that the theorizing of Defendants' retained experts is thoroughly refuted by the reality of the market in which he has worked for nearly twenty years; and with the sworn statement of

1

Emigra's own highly-qualified expert, who opines that Emigra has alleged valid antitrust claims and that Defendants' papers are insufficient to permit adequate economic analysis of their contentions, much less to justify dismissal of Emigra's claims as a matter of law. The factual basis for Defendants' motion is thus shown by proper evidence to be both insufficient if believed, and disputed.

Defendants' position is fatally flawed in three general respects. First, at its very best, it presents only a clash of expert opinion regarding market definition and dominance, and thus cannot possibly justify summary judgment. Second, it is plainly premature, as it relies necessarily upon facts that are solely within Fragomen's possession and not tested in discovery, and even some that have not even been disclosed by Defendants in support of their motion. Third, the Defendants' market and dominance contentions are incorrect as a matter of fact. Full development of the evidence will show the superiority and thus persuasiveness of Emigra's market definition (although this third argument is not one that Emigra need make, much less carry, in the context of a Rule 56(f) application, before any discovery).

Consequently, the motions should be denied in their entirety, and Emigra should not be required to respond further to such contentions until after it has had a full and fair opportunity for discovery.

### ARGUMENT

**I.  Plaintiff Should be Provided a Fair Opportunity for Discovery Before Having to Respond to the Merits of Defendants' Motion**

**A.  Legal Standards**

The legal standards controlling summary judgment are well established and need not be belabored here. The movant has the burden of adducing proof sufficient to show its entitlement to judgment as a matter of law, even assuming all factual disputes and inferences in favor of the

2

party opposing the motion. The opposing party's options include a defense on its merits or an application pursuant to Fed. R. Civ. P. 56(f) for discovery before being compelled to respond to the motion.

Regarding the latter option, Rule 56(f) provides that a party who "cannot present facts essential to justify its opposition" in response to a motion for summary judgment is entitled to discovery regarding those facts before having to respond on the merits. In this case, Emigra has not had any opportunity for discovery on any issue, as such proceedings were stayed at the initial conference in the case. Rule 56(f) is thus particularly appropriate here.

The standard for application of Rule 56(f) is a four-part test which requires that the applicant for discovery demonstrate: (1) "the nature of the uncompleted discovery;" (2) "how the facts sought are reasonably expected to create a genuine issue of material fact;" (3) "what efforts the affiant has made to obtain those facts;" and (4) "why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp*, 769 F.2d 919, 926 (2d Cir. 1985)).

The discussion below regarding Emigra's satisfaction of the *Burlington* test relies upon very well-settled law that a party must be afforded reasonable opportunity for discovery before judgment can be imposed. In circumstances where motions for summary judgment are submitted prior to the commencement of discovery, courts have granted discovery pursuant to Rule 56(f) as a matter of course. *See*, *e.g.*, *In re Wireless Telephone Services Antitrust Litigation*, No. 02-02637, 2004 WL 764833, at *1 (S.D.N.Y. Apr. 9, 2004) (grant of 56(f) motion and denial of summary judgment motion in antitrust case at "premature" discovery posture); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F.Supp.2d 659 (S.D.N.Y. 2000).

3

This is consistent with the more general practice in the Second Circuit which has "frequently emphasized the critical importance of discovery in the summary judgment context." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir.1983). Summary judgment before discovery should be "granted only in the clearest of cases." *Kleinman v. Vincent*, No. 90 CIV 5665, 1991 WL 2804, at *1 (S.D.N.Y. Jan.8, 1991). *See,* also, *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 303-04 (2d Cir. 2003) (pre-discovery summary judgment granted only in rarest cases); *Park Ave. Bank, N.A. v. Bankasi,* No. 93 CIV. 1483, 1995 WL 739514, *1 (S.D.N.Y. Dec. 13, 1995) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery").

Defendants' reliance upon *NatSource LLC v. CFI Group, Inc.*, 332 F. Supp.2d 626 (S.D.N.Y. 2004) to impose judgment without any opportunity for discovery is plainly inappropriate. In *NatSource*, Judge Sweet granted defendants' motion for summary judgment because plaintiff there utterly failed to satisfy the *Burlington* criteria, substantively or procedurally. First, the plaintiff did not oppose defendants' Local Rule 56.1 statement of undisputed facts: "NatSource not only admitted the facts contained in Defendants' Rule 56.1 Statement, but failed to set forth any disputed substantial facts whatsoever, relying solely on allegations in an unverified complaint." *NatSource*, 332 F. Supp.2d at 638. Second, "NatSource failed to submit a Rule 56(f) affidavit which is required where discovery is allegedly needed to oppose a summary judgment motion." *Id*. These extraordinary failures by plaintiff justified the extraordinary relief granted in that case. Neither of the material failures relied upon in *NatSource* are presented here, and thus the opposite result of that case should follow.

4

**B.     <u>Burlington</u> Standards for Pre-Response Discovery are Satisfied**

    **1.     Nature of Uncompleted Discovery**

The discovery needed to analyze and oppose Defendants' contentions is identified in the Declarations of Emigra's President, A. Pendleton DuPuis ("DuPuis Decl.") *see* ¶¶7-10, and in the Declaration of Fredrick Flyer, Ph.D., of Compass Lexecon ("Flyer Decl."), *see* ¶¶11-22. The economic expert identifies many critical gaps in Defendants' evidence, with the significance of those facts endorsed by the company officer based upon his actual experience in the marketplace.

Broadly stated, according to Emigra's expert, Defendants failed to adequately support certain material aspects of their argument, and they offered no real proof at all as to others, asking the Court in effect to trust the movant regarding the truth and interpretation of many essential but untested facts that were asserted in conclusory fashion and that are exclusively within Defendants' possession.

Such areas of Defendants' failure include information regarding Fragomen competition for work, Fragomen's customers and the services provided to them, Fragomen's revenues and margins and market share, Fragomen's vendor and other pertinent business relationships, and Fragomen's internal documents and dialogue regarding competitive matters. The Declarations for Emigra describe in greater detail much of the specific evidence needed in these areas. Responses on those points will of course generate reasonable follow-up inquires within those subject areas.

Defendants offered (and, according to Emigra, misinterpreted) general market data regarding the putative "market" of all immigration service providers, *i.e.* the entire industry. Defendants did not provide to this Court the testimony of any customer to dispute Emigra's description of the market and the competition within that defined market, or the identity or

5

characteristics of any bidders for single-source work that Fragomen has actually encountered in its business, or any specifics regarding Fragomen pricing or revenues or profitability or market share, or any internal documentation of Fragomen regarding any such matters.

Emigra's expert explains why this failure of proof utterly defeats Defendants' arguments against the single-source market as alleged by Emigra. That expert opinion favorable to Emigra is corroborated by a noteworthy source – Fragomen's founder, Austin Fragomen, Jr., who admitted in a recent press release regarding Fragomen's acquisition of Littler Mendelson's immigration practice that Fragomen recognizes and targets the very market defined by Emigra in this case:

> [The Littler acquisition] further enhances our goal of delivering comprehensive world-wide immigration services to large clients with complex needs who benefit from the delivery of consolidated global immigration services across multiple regions. The scale and breadth of our practice facilitates the smooth addition of these [Littler] professionals into our practice and in turn translates into opportunities for large clients to gain even greater efficiencies. DuPuis Decl. ¶¶29-32, Flyer Decl. ¶8 n.6. (emphasis added).

Further discovery is needed regarding market definition and competition within that market given the clash of party declarations, the clash of expert opinions, the dearth of pertinent evidence provided to date by Defendants, and the apparent admission of Fragomen's own founder in support of Emigra's market definition.

### 2. Reasonable Expectation to Show Issues of Material Fact

The materiality of the missing evidence described above is, we trust, evident to the Court, as it goes to the heart of market definition, competition within the market, barriers to entry to the market, and related matters.

6

Testimonial support for that materiality, with specific explanations of the anticipated discovery outcomes and conclusions therefrom, are set forth in the DuPuis Decl., *e.g.*, ¶11, and in the Flyer Decl., *e.g.*, ¶¶11, 16-19, 23-24. In summary, Mr. DuPuis avers his reasonable expectation that the evidence sought will prove the following:

- that discovery regarding Fragomen competition for work will show that Fragomen's competitors for pertinent work are primarily single-source providers, in a distinct market as alleged by Emigra;
- that discovery regarding Fragomen customers will show that Fragomen's leading customers are large corporations requiring coordinated and geographically diverse services, in a distinct market as alleged by Emigra;
- that discovery regarding Fragomen revenues and profits will show Fragomen's large share and dominance of the market alleged by Emigra;
- that discovery regarding Fragomen vendor relationships and dealings will show anticompetitive contracts and activity by Fragomen;

Materiality of those points is both plain and supported by the opinion of Dr. Flyer, who stated that such facts, if proven, would show "harm to competition . . . as Fragomen through its unlawful acts would have maintained and enhanced its market power by reducing Emigra's ability to compete" (Flyer Decl. ¶6), and that Defendants cannot possibly show the absence of unlawful anticompetitive activity without favorable development of such evidence beyond the motion submissions. *See id.* at ¶¶6, 10.

### 3.  Emigra Efforts to Obtain Pertinent Facts

Emigra efforts to obtain the pertinent evidence are described in the DuPuis Decl., *see* ¶¶12-13. In summary, these include research of information about Fragomen and the market that

7

is available to the general public; information gleaned from Emigra's own business experiences regarding competitors, customers, bidding activity; and the like. The results of such research are summarized in part in the Amended Complaint. Emigra intends to supplement that proof with evidence to be obtained through discovery.

### 4.  Why Those Efforts Were Unsuccessful

Emigra's inability to obtain further evidence regarding Fragomen follows from the nature of the evidence, as Dr. Flyer has identified a number of categories of information known only to Fragomen and its close associates – internal memoranda and discussions, marketing strategies, bidding activities, customers, revenues, margins, etc. *See also* DuPuis Decl. at ¶15 (listing the many material facts known only to Fragomen that are asserted in conclusory manner and wrongly purported to be without dispute in Defendants' motion papers). Such evidence cannot be obtained without compulsory process. *Id.* at ¶¶14-17.

Emigra's ability to obtain any such information through discovery in this case has of course been postponed by the stay imposed at the initial conference.

### C.  Defendants' Factual Allegations are Disputed and Flawed

There are disputes in this case regarding the applicable market definition and whether Fragomen dominates the pertinent market. Opposing facts regarding each are set forth in sworn statements of the parties, each supported by expert opinion, all raised before any discovery in the case. Summary judgment in such circumstances seems obviously inappropriate.

In the context of this application for discovery pursuant to Rule 56(f), Emigra need not, and does not, offer its full response to the merits of Defendants' motion. Certainly, if and when Emigra may be required to do so, it will fully articulate its opposition to the arguments raised in Defendants' motion.

8

Emigra provides some further argument in this Rule 56(f) application to better demonstrate the good faith basis for its belief that its claims are well founded, that the Defendants' motion is without merit, and that further discovery is necessary before the antitrust questions can properly be resolved.

Dr. Flyer found that the Amended Complaint describes unlawful restraint of trade if proven, and Emigra's President verified the Amended Complaint as set forth in his Declaration. Consequently, this Court has before it the opposite circumstance of *NatSource*, where plaintiff failed to verify its complaint or deny movants' Rule 56.1 averments. We believe this Court need look no further to deny the motion, or at a minimum, to grant the disclosure request.

Turning to specific arguments, Emigra provides here in opposition to the motion better evidence than Defendants offered in support of a position that purportedly lacked genuine grounds for dispute. Rather than having retained experts offer general inferences and suppositions from general market data, Emigra offers here testimony from its own President, himself an expert in the field of global immigration service delivery, regarding actual conduct of the market at issue.

### 1.    Market Definition and Dominance by Fragomen

Emigra's evidence shows the existence of a market for single-source providers to large corporations requiring coordinated services over geographically diverse regions. The existence and importance of this business is highlighted in the Fragomen press release quoted above. It also is shown in the DuPuis Declaration, which describes at length the growing demand for single-source services, the lack of other providers for those customers, and the irrelevance to that market of the many small firms, small departments of large firms, accountants, and others who service parts of a different and more diffuse market, or discrete regions thereof. *See* ¶¶20-45.

9

Indeed, Defendants concede that there is demand for single-source providers (e.g., Defendants' Memorandum of Law at 4). The question is not whether there is supply and demand for single-source services, only the size and players and operation of that business. Those facts are among those dispositive of whether a discrete market is shown, but they were not disclosed in Defendants' papers. Without such proof, the motion must fail.

As Dr. Flyer observed, the existence of the single-source market is not refuted by proof that many providers service smaller clients in the same industry, so long as those other providers do not compete in the single-source market. Mr. DuPuis testified that they do not. Defendants offer no contrary specific proof, arguing only the existence of numerous suppliers who offer a subset of the services delivered in coordinated fashion by Emigra and Fragomen, and who operate only in discrete geographic regions.

### 2. Barriers to Entry

The DuPuis Declaration summarizes some of the many barriers that exist to formation of a global single-source provider of immigration services. *See* ¶¶46-52. Fragomen's inability to identify any other single-source providers in the world is eloquent silence proving the efficacy of those barriers.

Defendants' experts fail miserably in arguing for the absence of barriers. Because they cannot show other providers who have overcome those barriers, or that the costs of doing so are low, or even that the human and other resources necessary to grow are available, Defendants' experts instead ask the Court to *infer* the absence of barriers: *See, e.g.,* Buffenstein Decl. ¶ 30 (it "is a reasonable inference" that many firms are well positioned to grow in response to "unusually high prices" of undefined magnitude); ¶32 (cost to add global reach "should not be prohibitive"). Such arguments have no place in favor of a party seeking judgment as a matter of law.

10

Further, those inferences are contrary to fact, as they are refuted directly in the DuPuis Declaration, *e.g.* ¶45, and by Fragomen's inability to show anyone who has gone through the putatively easy task of growing a global firm.

We note as well the challenges presented to any company trying to grow in this field that are presented by dealing with the Fragomen Defendants. Examples of their sharp practices that are set forth in the Amended Complaint give some idea of the battlefield they create for immigration service providers, with Fragomen's wholesale solicitation of competitor management, misappropriation of trade secrets, disruption of customer contracts and relationships, withholding of vendor services, and more.

Dr. Flyer opined that such conduct shows unlawful anticompetitive activity if proven. Emigra has shown that such aggressive conduct has been directed at Emigra because of its emergence as Fragomen's sole competition for single-source work. Fragomen has not denied much of the conduct, only its characterization and legality. The distinction between Emigra's contention of unlawful restraint of trade and Fragomen's counter of tough but fair competition should be tested through discovery and trial, not cut short before Emigra is given a chance even to fully develop its case, long before it ever gets a day in court.

Should that occur, Emigra of course would be worse off. More importantly, customers desiring single-source providers of global immigration services would be left with only two choices, one much smaller than the other, with the increased risk that the number of choices would eventually be reduced to one. Emigra asks this Court to permit its exploration of the facts pertinent to the issue of whether such an eventuality should be allowed to occur without full legal challenge, or even scrutiny of the pertinent facts through discovery.

**CONCLUSION**

For the foregoing reasons, Plaintiff requests respectfully that this Court issue an order denying Defendants' motions in their entirety and affording Plaintiff a reasonable opportunity for discovery before having to respond further.

Respectfully submitted,

Dated: Ithaca, New York　　　　　　　　　　　PINNISI & ANDERSON, LLP
　　　　　May 30, 2008

By:　*/s/ Michael D. Pinnisi*
　　　Michael D. Pinnisi
　　　(SDNY No. 5075)
　　　111 N. Tioga Street, Suite 200
　　　Ithaca, NY 14850
　　　Tel: (607) 257-8000

　　　*Attorneys for Plaintiff*

12