UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| EMIGRA GROUP, LLC, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | No. 07-cv-10688 (LAK) (HP) |
| --against-- | : |  |
|  | : | ECF CASE |
| FRAGOMEN, DEL REY, BERNSEN & LOEWY, LLP; FRAGOMEN, DEL REY, BERNSEN & LOEWY II, LLP; FRAGOMEN GLOBAL IMMIGRATION SERVICES, LLC; FRAGOMEN GLOBAL LLP; AND RYAN MATTHEW FREEL, | : | |
|  | : | |
|  | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000

*Counsel to Defendants Fragomen, Del Rey, Bernsen & Loewy, LLP; Fragomen, Del Rey, Bernsen & Loewy II, LLP; Fragomen Global Immigration Services, LLC; and Fragomen Global LLP*

GISKAN SOLOTAROFF & ANDERSON LLP
11 Broadway, Suite 2150
New York, New York 10004
Tel: (212) 500-5106

*Counsel to Defendant Ryan Freel*

**Table of Contents**

Table of Authorities ...........................................................................................................ii

Preliminary Statement ....................................................................................................... 1

Argument ........................................................................................................................... 3

I.    There is no Genuine Issue of Material Fact with Respect to Fragomen's Lack of
Market Power............................................................................................................ 3

    A.    Emigra May Not Prevail by Artificially Narrowing the Relevant Market. ........... 4

    B.    Emigra's "Single-Source" Model Does Not Reflect Market Realities and
Emigra's Own Statements........................................................................................ 6

II.   Emigra Fails to Demonstrate Any Legitimate Purpose for the Discovery It Seeks............ 7

Conclusion ....................................................................................................................... 10

## Table of Authorities

**Cases**

*Commercial Data Servers, Inc. v. IBM*, 166 F. Supp. 2d 891 (S.D.N.Y. 2001).............................4

*Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97 (2d Cir. 1981) ............7

*Daniel v. America Board of Emergency Medical*, 235 F. Supp. 2d 194 (W.D.N.Y. 2000).............3

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985)...........................3

*Estevez-Yalcin v. Children's Village*, 331 F. Supp. 2d 170 (S.D.N.Y. 2004)................................3

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,
    61 F.3d 123 (2d Cir. 1995)...........................................................................................4

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ...................................................3

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002)...................................................3, 4

*Tops Markets, Inc. v. Quality Markets Inc.*, 142 F.3d 90 (2d Cir. 1998)........................................3

*Xerox Corp. v. Media Sciences International, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007)...........4

**Rules**

Federal Rule of Civil Procedure 56(f) .....................................................................................2, 3, 7

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law, An Analysis of Antitrust Principles and Their Application
    ¶ 534 (2007) .................................................................................................................5

This reply memorandum of law is respectfully submitted in further support of the motion for summary judgment by defendants Fragomen, Del Rey, Bernsen & Loewy, LLP; Fragomen Del Rey, Bernsen & Loewy II, LLP; Fragomen Global Immigration Services, LLC; Fragomen Global LLP (collectively "Fragomen"); and Ryan Freel.  Defendants seek summary judgment on the federal antitrust claims asserted by plaintiff Emigra Group, LLC ("Emigra").

## Preliminary Statement

Fragomen has demonstrated with indisputable evidence that the market for business immigration services is highly competitive.  Through publicly available information as well as data based on the firm's own bidding experience, Fragomen established that the market is crowded with myriad global accounting firms, relocation firms, law firms and immigration consulting firms, as well as significant corporate in-house operations, and that barriers to entry into the market are low.

Emigra does not attempt to dispute the number and variety of competitors in the market, nor to present any proof — even from its own bidding records — that supports its contentions that Fragomen exercises monopoly power.  Instead, Emigra dreams up an implausibly narrow sub-market, consisting of only Fragomen and Emigra, purportedly made up of "single-source providers to large corporations requiring coordinated services over geographically diverse regions."  (Emigra Opposition at 9.)

Emigra fails to offer a shred of evidence to support this market definition.  More important, the definition Emigra alleges is inconsistent with the fundamental antitrust principle that products with reasonable interchangeability are part of the same market.  As Fragomen has demonstrated and Emigra does not dispute, business immigration services are highly standardized — identical services, such as visa and work permit processing, are offered by

1

countless competitors on the basis of flat fees.  Emigra has offered no structural or other explanation whatsoever to explain why, if purported "single-source providers" raised their prices, large companies would not switch to one of the myriad competitors offering the same services.  All available evidence and Emigra's own statements contradict Emigra's description of the market.[1]

Without any evidence to offer in opposition to Fragomen's motion, Emigra resorts to Rule 56(f), demanding extensive and wide-ranging discovery of confidential Fragomen documents, including internal materials related to Fragomen revenues and margins, market share, business relationships, customers, and pricing policies, as well as competition for work.  Of course, at least with respect to third-party documents related to competition and bidding for work — for example, customer requests for proposals — Emigra has the same access to such material as Fragomen has, and the fact that Emigra has not presented any such material in support of its claims is telling.  The remainder of the material encompassed by Emigra's discovery requests is irrelevant to Emigra's antitrust claims, and Emigra does not even attempt to explain how the information it seeks will reveal significant barriers to entry.  Indeed, the contents of Emigra's demand to review confidential and sensitive Fragomen materials exposes the real reason for this lawsuit:  to achieve a market advantage against Fragomen through anticompetitive litigation.

Federal Rule of Civil Procedure 56(f) "'is not a device for a fishing expedition or a means to avoid summary judgment on the mere hope that further evidence will develop.'" *Estevez-Yalcin v. Children's Village*, 331 F. Supp. 2d 170, 180 (S.D.N.Y. 2004) (citation omitted).  Rather than merely asserting that the defendant possesses evidence supporting

---

[1]     We respectfully refer the Court to the Reply Declaration of George Kosicki ("Kosicki Reply Decl."), dated June 27, 2008, which accompanies this memorandum.

plaintiff's claim, the plaintiff must identify specific discovery materials that are germane to its defense and that are neither cumulative nor speculative. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

Where a plaintiff does not meet this burden, courts hearing antitrust claims do not hesitate to deny discovery and grant summary judgment. *See, e.g.*, *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985); *Daniel v. Am. Bd. of Emergency Med.*, 235 F. Supp. 2d 194, 211 (W.D.N.Y. 2000). The Second Circuit has declared that "summary judgment serves a vital function in the area of antitrust law" by "preventing lengthy litigation that may have a chilling effect on pro-competitive market forces." *Tops Markets, Inc. v. Quality Mkts. Inc.,* 142 F.3d 90, 95 (2d Cir. 1998) (citations omitted); *see also PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 104 (2d Cir. 2002) (citation omitted).

Emigra brought this lawsuit not to redress injury, but in an attempt to gain a competitive advantage. Its failure to provide any proof of its theories and its blatant attempt to pry into Fragomen's sensitive business plans and information show its true purpose. The appropriate course is to grant summary judgment and to dismiss the complaint with prejudice.

## Argument

### I.    There is no Genuine Issue of Material Fact with Respect to Fragomen's Lack of Market Power.

Given the many competitors in the market and the low barriers to entry, as demonstrated in Fragomen's moving papers, Emigra cannot establish that Fragomen has market power, *i.e.*, that it has "the ability to raise price significantly above the competitive level without losing all of [its] business," *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,

61 F.3d 123, 129 (2d Cir. 1995) (citation and internal quotation marks omitted).[2] Without a

showing of market power, Emigra's antitrust claims must fail.  Emigra's attempt to avoid this

result by inventing a narrow submarket consisting of solely Fragomen and Emigra is untenable

under basic principles of antitrust law.  Summary judgment is therefore appropriate.

    A.    **Emigra May Not Prevail by Artificially Narrowing the Relevant Market.**

        Emigra's assertion of a market made up of "single-source providers to large

corporations requiring coordinated services over geographically diverse regions" (*see* Emigra

Opposition at 9) fails under black-letter antitrust doctrine.  For purposes of antitrust law, a

market consists of "'products that have reasonable interchangeability for the purposes for which

they are produced — price, use and qualities considered.'"  *PepsiCo, Inc.*, 315 F.3d at 105

(citation omitted).  Products are "reasonably interchangeable" if "consumers treat them as

acceptable substitutes."  *Id.* (citation omitted).  An action may be dismissed where a plaintiff

fails "to offer any plausible explanation as to why a market should be limited in a particular

way," *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 384 (S.D.N.Y. 2007), or "'to

distinguish among apparently comparable products.'"  *Commercial Data Servers, Inc. v. IBM*,

166 F. Supp. 2d 891, 896 (S.D.N.Y. 2001) (citation omitted).

        There is no question that the products at issue in this case are "reasonably

interchangeable" across myriad competitors.  Fragomen has established that the services offered

---

[2]    The transition to Fragomen of certain partners from U.S. law firm Littler Mendelson,
cited in Emigra's brief (*see* Emigra Opposition at 6), has no relevance to the issues discussed
here, because it does not affect the breadth and depth of competition in the business immigration
services market.  Moreover, Littler Mendelson continues to be active in both the inbound and
outbound business immigration services market.  *See*
http://www.littler.com/practiceareas/index.cfm?event=detail&childViewID=421&section=Practi
ce%20Areas&Practice Area=Immigration%2FGlobal%20Migration&subject=all.

4

in the market, such as visa and work permit processing, are highly standardized, and are generally performed on a fixed fee basis. (*See* Declaration of Daryl Buffenstein ("Buffenstein Decl.") ¶¶ 31, 59; Declaration of Lance Kaplan ("Kaplan Decl.") ¶¶ 24-25.) Competition in the market is thus focused on price. Commoditization has reached such a degree that many companies run internet auctions in which providers vie for the lowest bid on specific standard immigration services. (Kaplan Decl. ¶ 25.)

Emigra does not dispute these points. Nor does Emigra explain why, if Fragomen or Emigra were to raise its prices, a large corporation would not simply substitute its services for those of one or a combination of the accounting firms, relocation firms, law firms, or immigration consulting firms that provide identical services, or would not turn to its own in-house legal or Human Resources group.[3] Emigra cannot plausibly distinguish the products offered by Fragomen and Emigra from the products offered by these other competitors. Emigra's market definition is therefore unsound.[4]

_____

[3]     Emigra's market definition thus fails under the "hypothetical monopolist" test specified in the horizontal merger guidelines of the U.S. Department of Justice and the Federal Trade Commission (FTC), which asks whether a hypothetical monopolist in the defined market would find it profitable to impose a "small but significant and nontransitory" increase in price where the terms of sale of all other products remained constant. If not, the market definition is too narrow. (*See* Declaration of George Kosicki, dated February 22, 2008, ¶ 8 & n. 8; Kosicki Reply Decl. ¶¶ 4.2-4.3.)

[4]     Even if Emigra could establish that certain large companies prefer single-source providers (which it cannot), that would not satisfy the market definition test. The key question is whether there would be acceptable substitutes if the purported single-source providers increased their prices. *See* Areeda & Hovenkamp, Antitrust Law, An Analysis of Antitrust Principles and Their Application ¶ 534 (2007) ("[T]he market is not where customers currently buy, but where they could 'realistically turn' in order to avoid monopoly prices." (citation omitted)). Here, given the uniform nature of the services offered, countless firms could step in to replace the (continued…)

B.     **Emigra's "Single-Source" Model Does Not Reflect Market Realities and Emigra's Own Statements.**

Even if Fragomen and Emigra provide "single-source" business immigration services to large businesses and are the only firms in the market that do so, they do not make up a market for antitrust purposes, as explained above. In reality, however, Emigra's description of the market is simply inaccurate, as Emigra's own statements reveal. Mr. DuPuis, Emigra's President and Chief Marketing Officer, states in his declaration that Emigra provides immigration services through "offices in thirteen countries and a large network of outside providers." (Declaration of A. Pendleton DuPuis ("DuPuis Decl.") ¶ 21.) This model — offering global services through an international network of outside providers — allows firms to compete for outbound immigration work without establishing numerous international offices, significantly lowering barriers to entry.[5] As noted in Fragomen's moving papers, there are a number of large global immigration attorney networks that can be used for this purpose. (*See* Buffenstein Decl. ¶ 29.)

Moreover, Fragomen has put forward bidding data that directly contradicts Emigra's claim that only Fragomen and Emigra compete for large corporate clients. (*See* Kaplan Decl. ¶ 22.) In the bid described by Mr. Kaplan, a Fortune 100 company sent out requests for information to 48 different providers, and 28 providers responded. (*Id.*) Despite Emigra's access to data regarding all of the bids that it has participated in, Emigra has failed to put forward

---

services of any purported single-source provider that raised its prices. (*See* Kosicki Reply Decl. ¶ 4.3.)

[5]     Mr. DuPuis's statement on this point contradicts his later claim that it "simply does not work in practice" for U.S. providers to "form relationships with foreign offices managed from the U.S. base." (*See* DuPuis Decl. ¶ 49.)

evidence of even one case in which only Emigra and Fragomen were solicited to bid.  If
Emigra's assertions regarding the purported "single-source market" were correct, however, it
would have evidence of countless bids of this kind at its fingertips.  Emigra's silence shows why
summary judgment is appropriate.

## II.    Emigra Fails to Demonstrate Any Legitimate Purpose for the Discovery It Seeks.

As the Second Circuit has long held, "Rule 56(f) cannot be relied upon to defeat a
summary judgment motion 'where the result of a continuance to obtain further information
would be wholly speculative.'" *Contemporary Mission, Inc. v. United States Postal Service*, 648
F.2d 97, 107 (2d Cir. 1981) (citation omitted).  Emigra has failed to provide any rationale why
the discovery it seeks would show anything germane to its alleged market definition.

First, Emigra asks for discovery from Fragomen's files regarding competition,
including the content of requests for proposals, identities of competing bidders, services required
by potential customers, services offered by bidders, identities of winning bidders and prices
offered by winning bidders.  (*See* DuPuis Decl. ¶ 9(a).)  This request is remarkably disingenuous.
As Emigra itself insists, Fragomen and Emigra compete in the same market for the same
customers (*see* Emigra Complaint ¶ 18), and therefore receive the same requests for proposals
and witness the same bidding activity.  Emigra therefore has access to all of the bidding
information that Fragomen has.

Indeed, Fragomen provided data in its moving papers regarding a representative
bid that it recently participated in.  (*See* Kaplan Decl. ¶ 22.)  Fragomen also produced illustrative
"screenshots" from an internet auction for immigration services in the UK that was recently
sponsored by a global financial services firm.  (*See* Kaplan Decl. ¶ 25 & Ex. B.)  Emigra neither
addresses this evidence nor presents bidding data of its own, but instead demands to review

Fragomen's internal documents. The reason for Emigra's failure to present its own bidding information is clear — the data simply does not support Emigra's assertions that Fragomen and Emigra compete in a separate market.[6]

In addition to discovery regarding competition in the market, Emigra requests discovery of a massive amount of other confidential Fragomen material, including "strategic internal documents" relating to pricing policies and market share, customer information such as customer lists and annual revenue per customer, and sales information such as aggregate sales revenue and aggregate volume of transactions.[7] (*See* DuPuis Decl. ¶¶ 9(a)-(c); Declaration of Fredrick Flyer ("Flyer Decl") ¶¶ 14-19.) Emigra also asks to review Fragomen's contracts with its vendors. (*See* Flyer Decl. ¶ 22.) Emigra presents no rational basis for these improper requests to delve into Fragomen's internal documents. These materials are irrelevant to the issues regarding competition in the market raised by Emigra's antitrust claims. (*See* Kosicki Reply Decl. ¶ 9.) In reality, Emigra's discovery requests are no more than a wish list of confidential information it hopes to use to gain unfair advantage over Fragomen in the market. Such blatantly anticompetitive maneuvering should not be permitted.

---

[6] In response to Fragomen's evidence about a bidding auction, which was run by a global financial services firm, Emigra states only that "[m]any parties competed for the work, but Fragomen won it." (DePuis Decl. ¶ 43.) The fact that Fragomen won the bid is irrelevant. The key fact is that, as Emigra concedes, "many parties competed for the work." That fact directly contradicts Emigra's assertion that only Fragomen and Emigra compete for contracts for large multi-national corporations.

[7] While insisting on the need to review Fragomen's internal customer data, Emigra fails to address substantively the evidence presented by Fragomen regarding customer practices — specifically, the results of a survey of 131 corporations regarding immigration policies and practices. (*See* Buffenstein Decl. ¶¶ 47, 61 & Ex. B.) That survey demonstrates that a majority of corporations make use of in-house immigration services, and that a majority of those that use external providers use more than one. (*Id.*)

8

Finally, Emigra states that a review of Fragomen's contract with a Japanese vendor, ILS Shimoda, is necessary "[t]o assess whether Fragomen entered into exclusive agreements with Shimoda."  (*See* Flyer Decl. ¶ 22.)  In its motion papers, however, Fragomen established through publicly available information that its relationship with ILS Shimoda is *not* exclusive.  (*See* Buffenstein Decl. ¶ 50; Kaplan Decl. ¶¶ 16-19.)  Emigra's suggestion that Fragomen dominates the Japanese market for business immigration services is particularly ludicrous given that Fragomen does not even have an office in Japan, while Emigra does.  (*See* Kaplan Decl. ¶ 17; Emigra Amended Complaint ¶ 15.)

**Conclusion**

For the foregoing reasons, defendants' motion should be granted in all respects. The Court should issue an order granting summary judgment in favor of defendants on all of Emigra's antitrust claims, and should dismiss Emigra's state law claims for lack of subject matter jurisdiction.

Dated:    New York, New York
          June 30, 2008

COVINGTON & BURLING LLP                 GISKAN SOLOTAROFF & ANDERSON LLP


By: /s/ C. William Phillips             By: /s/ Darnley D. Stewart
    Charles E. Buffon                       Darnley D. Stewart
    C. William Phillips                 11 Broadway, Suite 2150
    Andrew A. Ruffino                   New York, New York 10004
    Anna E. Lumelsky                    Tel: (212) 500-5106
620 Eighth Avenue
New York, New York 10018                *Counsel to Defendant Ryan Freel*
Tel: (212) 841-1000

*Counsel to Defendants Fragomen, Del Rey,*
*Bernsen & Loewy, LLP; Fragomen, Del*
*Rey, Bernsen & Loewy II, LLP; Fragomen*
*Global Immigration Services, LLC; and*
*Fragomen Global LLP*

10